### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) |
| | ) CIVIL ACTION NO. 07-80169 (DTKH) |
| Plaintiff, | ) |
| | ) |
| RAY STRACK, | ) |
| | ) |
| Plaintiff-Intervenor | ) |
| | ) |
| v. | ) |
| | ) |
| BELLE GLADE CHEVROLET-CADILLAC-BUICK-PONTIAC-OLDSMOBILE, INC. and PLATTNER AUTOMOTIVE GROUP, INC. | ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF AND PLAINTIFF-INTERVENOR'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, United States Equal Employment Opportunity Commission, ("EEOC"), and Plaintiff-Intervenor, Ray Strack, hereby file this Response in Opposition to Defendants' Motion for Partial Summary Judgment, DE 25.  Defendants[1] have not addressed Plaintiff and Plaintiff-Intervenor's retaliation claim, or Plaintiff-Intervenor's breach of contract claim in their motion, therefore these claims survive Defendants' motion.  For the reasons stated herein, genuine issues of material fact exist and Defendants' motion on the sexual harassment claim should be denied.

---

[1]     Defendants state in a footnote in their motion that they have not addressed the "joint employer issue" because Defendants' total number of employees do not exceed 100 for the purpose of Title VII damage caps. Plaintiff and Plaintiff-Intervenor do not concede that that Defendants' total number of employees is below 100, but will not address the issue in this brief since Defendants have chosen not argue it.

## I.  SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the burden of demonstrating that no genuine dispute as to any material fact exists.  FRCP 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).  The court must resolve all reasonable doubts as to the facts in favor of the party opposing summary judgment and must "draw all justifiable inferences in his favor." Fitzpatrick v. City of Atlanta, 3 F.3d 1113, 1115 (11th Cir. 1993).

## II.  ARGUMENT

### A.  Defendants Subjected Strack to Same-Sex Harassment and a Hostile Work Environment

Defendants discriminated against Strack, in violation of Title VII, by subjecting him to same-sex harassment and a hostile work environment.  Ray Strack began his employment with Defendants in August 2004.  He was Defendants' Internet Manager and eBay Manager for Defendants' Bell Glade, Florida location.  (Strack Dep. at 141:16-20)  Strack enjoyed his job and looked forward to going to work (Strack Dep. at 141:16-20), until Brian Paonessa, a co-worker and then for a period of time Strack's supervisor, began to sexually harass Strack and subject him to a hostile work environment.

To demonstrate sexual harassment, an employee must show: (1) "that he or she belongs to a protected group;" (2) that he or she "has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature;" (3) that the harassment was "based on sex ...;" (4) "that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment;" and (5) "a basis for holding the employer liable."   Johnson v. Booker T. Washington Broadcasting Service, Inc., 234 F.3d 501, 508 (11th Cir. 2000) (quoting Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).  As demonstrated below, Strack meets the

2

five part test to show Defendants subjected him to sexual harassment and a hostile work environment.

### 1.   Strack Belongs to a Protected Group

Title VII's prohibition of discrimination "because of sex" protects both men and women. Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78 (1998) (citing Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 682 (1983)).  Strack, therefore, belongs to a protected group, men, for purposes of Title VII liability.

### 2.   Strack was Subjected to Unwelcome Sexual Harassment

Strack was subjected to numerous instances of unwelcome sexual harassment.  (Strack Dep. Ex. 2)  As fully detailed below, Brian Paonessa subjected Strack to unwelcome sexual advances, remarks about sexual encounters he wished to have with Strack, and unwelcome physical contact.

Paonessa began to harass Strack by making sexual advances towards him and suggesting a homosexual relationship.  Paonessa approached Strack and told him, "Ray you seem like a pretty nice guy, I'm a nice guy and together we would make a nice couple."  (Strack Dep. at 223:10-14; Strack Dep. Exhibit 2)  A few weeks later, Paonessa again made a sexual advance towards Strack by asking him out on a date.  Paonessa said, "Let's do lunch.  We could get together and get to know each other better."  Strack interpreted this comment to be a sexual advance by Paonessa. (Strack Dep. at 224:2-6; Strack Dep. Exhibit 2)

When Strack refused Paonessa's advances the harassment became more severe, humiliating and physically threatening.  In December 2004, as Strack was walking down a hallway, Paonessa walked up closely behind him and said, "If you stop, I'll stick my dick right up your ass."  Later that day, Paonessa grabbed his penis in front of Strack and asked him, "Can I

offer you my dick as a snack?"  Strack immediately complained to Cliff Lewis, General Sales Manager, about the incident.  (Strack Dep. at 224:22-225:18; Strack Dep. Exhibit 2)

Approximately one week later, Paonessa again humiliated Strack and insinuated a sexual encounter when he unzipped his pants to expose his penis and asked Strack, if he could "take it [Paonessa's penis] in the ear."  (Strack Dep. at 219:1-14; 223:10-14;19-25; 224:2-12; 251:14-17; Strack Dep. Exhibit 2).

On a separate occasion in December 2004, Paonessa again harassed and humiliated Strack and became physically threatening.  Paonessa grabbed his penis and unzipped his pants in front of Strack as Strack walked down a hallway.  When Strack attempted to get away from Paonessa, Paonessa followed him into an office and proceeded to make "humping" gestures towards Strack.  (Strack Dep. Exhibit 2)

On or about December 31, 2004 Paonessa told everyone present at a weekly sales meeting, including Sam Stucki, Defendants' General Sales Manager, that "[Strack] would suck my dick."  Although this comment was made in the presence of management, no action was taken against Paonessa.  (Strack Dep. at 215:21-25; Strack Dep. Exhibit 2)

In January 2005 Paonessa continued to severely harass Strack.  Paonessa told Strack, "You have a pretty mouth and I'd like to cream in it [ejaculate] and watch it run down your mouth."  (Strack Dep. Exhibit 2)  Approximately a week later, Paonessa told Strack, "Hey Ray, play with my wang!"  Paonessa made this remark in the presence of Lewis, who then told Strack that Paonessa was "one sick puppy," but took no action.  (Strack Dep. at 253:24-255:1; Strack Dep. Exhibit 2)

Despite Strack's numerous complaints to management regarding Paonessa's sexually harassing conduct, Stucki promoted Paonessa to Sales Manager, a position where he directly

supervised Strack.   (Stucki Dep. at 140:25-141:24; Strack Dep. Exhibit 2)   After he became Strack's supervisor Paonessa continued to sexually harass Strack.   In February 2005 Paonessa offered Strack car deals or business in exchange for sex.   Paonessa told Strack, "you could have my customers and make a lot of money and [I'll] feed you till you're full."   Paonessa then stuck his tongue out at Strack and made lewd gestures with it, and then licked his lips.   Strack naturally concluded that Paonessa was suggesting oral sex given Paonessa's remarks, together with his gestures and his previous sexual advances and harassing conduct.   Strack Dep. at 259:18-260:16; 261:10-14; Strack Dep. Exhibit 2)   Strack complained to Stucki about this incident, however Stucki simply ignored him and took no action.   (Strack Dep. at 244:8-10; Strack Dep. Exhibit 2)

In May 2005 Paonessa initiated unwanted physical contact.   Paonessa blew on and then kissed Strack's arm.   Strack immediately complained to Scott Rubenstein, Sales Manager, about the unwanted physical incident because he believed that it was an attempt to initiate a sexual relationship.   Rubenstein said, "he's a jerk," but took no further action.   (Strack Dep. at 230:23-231:14; 231:24-232:6; 236:8-14; Strack Dep. Exhibit 2)

A few weeks later Paonessa instructed Strack to pick him up at his house the following morning to drive to work together, and told Strack, "you'll enjoy the ride."   Based on Paonessa's remark and the numerous sexual advances he already made towards Strack, Strack was fearful that Paonessa would attempt another sexual advance and physical contact if they were alone together in a car.   Therefore, Strack refused Paonessa's directive.   (Strack Dep. at 220:7-221:5)

In June 2005 Paonessa continued his harassing, humiliating and physically threatening behavior.   In the presence of Rubenstein, Paonessa walked up close behind Strack and said, "you have a nice ass."   Paonessa then grabbed his penis and told Strack, "I'll give you this [Paonessa's penis] if you think you could take all of it in the ass."   (Strack Dep. Exhibit 2)

Later in June, at a weekly sales meeting in the presence of Stucki and several other employees, Paonessa asked Strack if he could give Strack a "hand job."  Strack understood this comment to mean that Paonessa wanted to have a physical sexual encounter with him.  (Strack Dep. at 217:17-14; Strack Dep. Exhibit 2)

In July 2005 Paonessa continued his severely harassing conduct.  In the presence of "JP," a Finance Manager, Paonessa asked Strack, "will you pull this [Paonessa's penis]," while unzipping his pants, sticking out his tongue and licking his lips.  Strack understood Paonessa's actions and remarks to be a proposition for sex and immediately told Stucki, who had walked in the room.  Stucki ignored Strack's complaint and walked out of the room.  (Strack Dep. at 244:19-245:9; Strack Dep. Exhibit 2)

Throughout the entire time Strack endured the unwanted harassment, he continuously told Paonessa to "leave [him] alone," and avoided Paonessa when he could in order to escape the constant barrage of inappropriate sexual advances.  (Strack Dep. at 183:24-184:1; 227:8-10)  However, as much as Strack tried to avoid Paonessa, he continued to subject Strack to unwanted sexual harassment.  Additionally, Stack's multiple complaints to management show that Paonessa's conduct was completely unwelcome.

### 3.  The Harassment was Because of Strack's Sex

The Supreme Court in Oncale, 523 U.S. 75, established that male on male sexual harassment is actionable.  The Supreme Court identified three types of evidence that would permit courts and juries to find that prohibited discrimination has occurred where the harasser and victim are of the same gender: (1) explicit or implicit proposals of sexual activity motivated by sexual desire; (2) "such sex-specific and derogatory terms" are used that it is clear that the harasser is motivated by general hostility" towards that gender's presence in the workplace; and

(3) "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." Id. at 80-81. The evidentiary routes the Court identified are examples and not intended to be an exhaustive list of the ways to prove that harassment is based on sex. See Shepherd v. Slater Steels Corp., 168 F.3d 98, 1009 (7th Cir. 1999) ("we discern nothing in the Supreme Court's [Oncale] decision indicating that the examples it provided were meant to be exhaustive rather than instructive").

In this case Paonessa made numerous sexual advances towards Strack because of his sex, male, because he wanted to initiate a homosexual relationship with Strack. (Strack Dep. at 219:1-14; 223:10-14; 19-25; 224:2-12; 251:14-17) As detailed *supra*, Paonessa propositioned Strack on numerous occasions for oral and anal sex. Strack had heard rumors that Paonessa was "kinky" (Strack Dep. at 220:2-5), and these rumors were confirmed when Paonessa began making sexual advances towards him. These explicit proposals of sexual activity would not have been made but for the fact that Strack is a man. Oncale, 523 U.S. at 81.

Plaintiffs do not have to present evidence that Paonessa was homosexual for the Court to infer that he acted out of sexual desire. A plaintiff does not have to establish that the harasser is homosexual to show that the harassing conduct was motivated by sexual desire. Dick v. Phone Directories Co., Inc., 397 F. 3d 1256, 1265-1266 (10th Cir. 2005). The Tenth Circuit in Dick noted that the alleged harasser could consider himself as a heterosexual, "but nonetheless propose or desire sexual activity with another [man] in a harassing manner." Id. In that instance, the court reasoned, evidence of homosexuality beyond the harassing conduct itself may not be forthcoming, even though the harasser acted out of sexual desire. Id. Aside from the harassing conduct itself, it would be very difficult to obtain evidence that shows a person's sexual orientation. Id. (reversing the grant of summary judgment in favor of the employer when it

found that plaintiff presented sufficient evidence that a jury could find that same-sex harassers were motivated by sexual desire, not out of sheer dislike).

Similarly, the Seventh Circuit in Shepherd, 168 F.3d at 1010, held that although the evidence presented by the same-sex harassment plaintiff did not necessarily prove that the harasser was homosexual, "the connotations of sexual interest in [plaintiff] certainly suggest that [harasser] might be sexually oriented towards members of the same sex.  That possibility in turn leaves ample room for the inference that [harasser] harassed [plaintiff] because [plaintiff] is a man."  Id. (holding that the interpretation of harasser's conduct is a task for the factfinder after trial since it requires one to weigh the tone and nuances of harasser's words and deeds, as well as a host of other intangibles that deposition transcripts do not reveal).  See also Cromer-Kendall v. District of Columbia, 326 F.Supp.2d 50, 57 (D.D.C. 2004) (holding that although same-sex harassment plaintiff's allegations did not necessarily show that the harasser was homosexual, the evidence was sufficient to show harasser intended to have some kind of sexual contact, and therefore a reasonable juror could conclude that plaintiff was harassed because of her sex).  Here, Paonessa's remarks and conduct towards Strack were blatantly referencing sexual acts so that any reasonable juror could also conclude that Paonessa was motivated by sexual desire.

Sexual desire is not the only motivation behind the harassing conduct which will support an inference of discrimination on the basis of sex.  Oncale, 523 U.S. at 80-81.  A same-sex harassment plaintiff can also offer evidence that the harasser only harassed members of the same sex in a mixed–sex workplace. Oncale, 523 U.S. at 81.  "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id. at 80 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 25 (1993)).  In this case, Paonessa only made sexual

8

advances towards men, not women, in a mixed-sex work environment.  (Strack Dep. 219:8-10).

Women were not subjected to altered working conditions because they were not exposed to

harassment.   Therefore, Strack, as a man, was exposed to different terms and conditions of

employment than his female co-workers.  See Kampier v. Emeritus Corp., 472 F.3d 930, 940-

941 (2007) (holding that plaintiff raised an issue of material fact that the harassment was based

on sex when a same-sex harasser made comments to plaintiff women about her breasts and said

she could turn any woman gay, while not saying as severe comments to men).

Accordingly, since the sexual advances towards Strack were motivated by a desire to

engage in a homosexual relationship because Strack is a man and because Paonessa did not

sexually harass women, Strack meets the third prong of the test to show sexual harassment – that

the harassment was based on sex.

### 4.   The Harassment was Sufficiently Severe and Pervasive to Alter Strack's Working Conditions

To show sexual harassment, an employee must also show that the harassment was

"sufficiently severe or pervasive to alter the terms and conditions of employment and create a

discriminatorily abusive working environment."   Johnson, 234 F.3d at 508 (quoting Mendoza,

195 F.3d at 1245).

Sexual harassment occurs, whether or not it is directly linked to the grant or denial of an

economic quid pro quo, where "such conduct has the purpose or effect of unreasonably

interfering with an individual's work performance or creating an intimidating, hostile, or

offensive working environment." Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65, 69

(1986).  "When the workplace is permeated with discriminatory intimidation, ridicule, and insult

that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment, Title VII is violated." Harris, 510 U.S. at 21 (citations omitted).

In order to show that the harassment was severe and pervasive, a sex-harassment plaintiff must show that the harassment was both subjectively and objectively severe and pervasive. Johnson, 234 F.3d at 509 (citing Mendoza, 195 F.3d at 1246). The severity and pervasiveness of harassing conduct is judged by looking at the totality of the circumstances. Dar Dar v. Associated Outdoor Club, Inc., 201 Fed. Appx. 718, 722 (11th Cir. 2006) (citations omitted).

As demonstrated below, Strack subjectively felt that the harassment was hostile and a reasonable person in Strack's circumstances would also perceive the harassment as sufficiently hostile.

**i.   Strack Perceived the Harassing Conduct as Severe and Pervasive**

Harassment is deemed subjectively severe and pervasive when the complaining employee perceives the harassment as severe and pervasive. Johnson, 234 F.3d at 509 (citing Mendoza, 195 F.3d at 1246). In this case, Strack subjectively perceived Paonessa's conduct as harassing.

Strack was completely offended by Paonessa's sexual advances and felt ashamed and embarrassed that another man would make sexual advances towards him. (Strack Dep. at 32:1-9) Strack rebuffed all of Paonessa's advances and told Paonessa to "leave [him] alone," but Paonessa continued sexually harassing Strack. Therefore, Strack tried to avoid Paonessa as often as he could. (Strack Dep. at 183:24-184:1; 227:8-10)

Defendants do not dispute that Strack perceived the harassment as severe and pervasive. However, Defendants argue that Strack did not subjectively perceive the harassment to alter the conditions of his employment because he attempted to avoid Paonessa. (DE 25, p. 11) This argument flies in the face of reason and in the directive by the Supreme Court in Oncale to

examine the totality of circumstances.  See Martin v. Schawan's Sales Enterprises, Inc., 198 F.3d 246 (Table), *2 (6th Cir. 1999) (The Sixth Circuit reversed the district court's finding that the same-sex harassment did not interfere with plaintiff truck drivers ability to perform their job because that were on the road most of the day.  The court held, "This finding downplays the full impact the conduct may have had on plaintiffs' work environment and thereby violates the Supreme Court's directive to look at the totality of the circumstances." (internal citations omitted)).

Strack avoided Paonessa precisely because the harassment was severe and pervasive. (Strack Dep. at 227:8-10)   Unfortunately, Strack's attempts at avoiding Paonessa were futile as Paonessa continued to subject Strack to unwelcome sexual advances, remarks, gestures and physical contact.  The harassment made Strack uneasy and agitated.  (Strack Dep. at 28:21-29:12)  The harassment, therefore, affected the terms and conditions of Strack's employment. His terms and conditions of employment were also affected by the very fact that he had alter his behavior in the workplace in order to avoid Paonessa.   See Johnson, 234 F.3d at 509. Defendants' argument, therefore, has no merit and Strack can show that he subjectively perceived Paonessa's conduct as harassing.  At the every least, this is an issue of fact and is inappropriate to decide on a motion for summary judgment.

### ii.  A Reasonable Person Would Find the Harassing Conduct Severe and Pervasive

A plaintiff must show that a reasonable person in his/her position would find the harassing conduct severe and pervasive.  Johnson, 234 F.3d at 509 (citing Mendoza, 195 F.3d at 1246).  When determining whether the harassing conduct is objectively severe and pervasive the court can consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance.  Harris v. Forklift Systems, Inc., 510 U.S.17,

23 (1993).  See also Johnson, 234 F.3d at 509; Mendoza, 195 F.3d at 1246.  "No single factor is

required."  Id.

Any reasonable person in Strack's position would find Paonessa's conduct to be

harassing.  In fact, Defendants' own General Manager, a man and employee of several car

dealerships, acknowledged that he would be offended by Paonessa's conduct and find it to be

harassing.  (Stucki Dep. at 74:3-9)

Strack was the victim of unwanted sexual harassment that was sufficiently severe and

pervasive.  Although not required to meet all four objective factors, Plaintiffs can easily do so:

*The harassing conduct was severe*.  Paonessa's harassing conduct included

exposing his penis to Strack, grabbing his penis in front of Strack, making lewd gestures towards

Strack with his tongue, walking up very close behind Strack, kissing Strack's arm, making

humping motions towards Strack, and making lewd and vulgar remarks towards Strack

propositioning Strack with oral and anal sex.  Any reasonable person in Strack's position would

find this conduct to be severe.  See, e.g., Johnson, 234 F.3d at 509 (The court found the conduct

to be severe when the harasser gave plaintiff unwanted massages, stood so close behind plaintiff

that he touched her, and pulling his pants tight to reveal the imprint of his private parts).  See

also Bailey v. Runyon, 167 F.3d 466, 469 (8th Cir. 1999) (finding that there was sufficient

evidence to support the jury's finding of harassment when a male co-worker asked the male

plaintiff male to perform sex, oral sex and partake in other sexual activities).

*The harassment was frequent.*  Strack took notes of at least sixteen separate

incidents of harassment.  (Strack Dep. at 134:4-136:8)  There were also other incidents of

harassment which are not reflected in Strack's notes.  (Strack Dep. at 134:4-136:8)  Together,

well over sixteen incidents in the span of nine months, the incidents of harassing conduct were frequent and lasted throughout the duration of Strack's employment.

*The harassing conduct was physically threatening and humiliating.*   All of the incidents of harassment described *supra* were humiliating for Strack.   (Strack Dep. at 32:1-9) Many instances of sexual advances and lewd remarks and propositions for sex occurred in front of Strack's supervisors and co-workers.   (Strack Dep. at 215:21-25; 217:17-14; 244:19-245:9; Strack Dep. Exhibit 2)   Strack was humiliated and ashamed that he was being sexually harassed. This humiliation and embarrassment was exacerbated even further because the harassment occurred in front of managers who did nothing to stop it.   Furthermore, Paonessa's conduct was physically threatening and not a mere offensive utterance.   Paonessa exposed his penis, grabbed his penis, made lewd gestures with his tongue, stopped Strack from leaving a room, walked closely behind Strack, kissed Strack and propositioned Strack with homosexual sex.   (Strack Dep.  at  219:1-14;  223:10-14,19-25;  224:2-225:18;  230:23-231:14;  231:24-232:6;  236:8-14; 244:19-245:9;  259:18-260:16;  261:10-14;  Strack  Dep.  Exhibit  2)     Furthermore,  Strack  felt physically threatened when Paonessa told Strack to pick him up to drive to work together. Strack refused because he was afraid that Paonessa would make a physical sexual advance. (Strack Dep. at 220:7-221:5)   Any reasonable person would find this conduct to be physically threatening.  See, e.g., Johnson, 234 F.3d at 509.

*The harassing conduct unreasonably interfered with Strack's job performance.* The harassing conduct made Strack agitated and he lost confidence at work.  (Strack Dep. at 28:21-29:12.   This prevented him from reaching his full potential in sales when at work. Paonessa's harassment, therefore, unreasonably interfered with Strack's job performance.  See, e.g., Johnson, 234 F.3d at 509.

The evidence is sufficient to show that Paonessa's behavior was objectively hostile. Johnson, 234 F.3d at 509. Under less severe circumstances as those presented here, the Eleventh Circuit found in Johnson the harassment to be objectively severe and pervasive. The court determined that the conduct was frequent; severe (harasser gave plaintiff unwanted massages, stood so close behind plaintiff that he touched her, and pulling his pants tight to reveal the imprint of his private parts); physically threatening and humiliating (same); and interfered with job performance (plaintiff was so upset by the harassment that she could not get along with the harasser, her on-the-air co-host). Id.

Defendants point to Mendoza and Gupta v. Florida Board of Regents, 212 F.3d 571 (11th Cir. 2000) as authority to show that Paonessa's harassment should not be considered objectively severe and pervasive. However, the facts presented in Mendoza and Gupta are distinguishable from the facts presented here. In both cases there were "fewer instances of less objectionable conduct over longer periods of time." Johnson, 234 F.3d at 509 (finding that the harassment was objectively severe and pervasive when plaintiff offered a set of facts that differed from Mendoza and Gupta). Particularly, in Mendoza, the court reasoned that the harassing conduct was not physically threatening, severe, or frequent when plaintiff offered evidence of a single instance of slight physical contact, one arguably inappropriate statement, and three instances of the harasser making "sniffing" sounds over an eleventh month period. Mendoza, 195 F.3d at 1249. The facts presented in this case show that the conduct was physically threatening, more severe than the conduct described in Mendoza, and frequent, occurring almost every month throughout Strack's employment with Defendants. Furthermore, in Gupta, the plaintiff offered evidence of fewer instances of harassment over a longer period of time. The incidents of harassment offered by the plaintiff in Gupta were also not blatant propositions for sex, as presented in this case.

14

Contrary to Defendants' assertion (DE 25, p. 14), Paonessa's remarks and actions cannot be viewed in a vacuum or in isolation – the court must view the totality of the circumstances and consider not only the remarks, but also Paonessa's lewd sexual gestures and unwelcome physical contact.  Dar Dar, 201 Fed. Appx. at 722.  Even seemingly "facially neutral" remarks, i.e. having lunch or asking for a ride for work, can support a finding of a hostile work environment claim when that conduct is viewed in the context of other overtly harassing conduct.  O'Shea v. Yello Technology Services, Inc., 185 F.3d 1093, 1097 (10th Cir. 1999).  When considered together, these incidents of severely harassing conduct are not merely "locker room banter" or "sophomoric" conduct as the Defendants would have this Court believe.  (DE 25, p. 7; 12) "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive."  Oncale, 523 U.S. at 82.

No employee in Strack's position should endure the type of physical and verbal sexual harassment that Strack endured and no reasonable person would consider this conduct to be mere teasing.  Title VII was not meant to be a "general civility code," however, contrary to Defendants' assertion, the automotive industry is not an open forum for individuals to make sexually harassing advances and remarks and engage in physically threatening behavior towards their subordinates and co-workers.  "A hectic, greasy and otherwise unsavory environment that condones foul language and boorish behavior still does not justify harassment of an individual based on her sex."  King v. Auto, Truck, Industrial Parts and Supply, Inc., 21 F.Supp.2d 1370, 1380 n. 8 (N.D.F.L. 1998) (Court denied employer auto parts store's motion for summary judgment on sexual harassment claim).

Plaintiffs have offered evidence to show that the harassing conduct was both subjectively and objectively severe and pervasive.  At the very least, they have created an issue of fact that should be decided by the jury.

### 5.  Defendants are Liable for the Harassment

Defendants are strictly liable for Paonessa's harassing conduct towards Strack during the period that Paonessa was a supervisor.  <u>Johnson</u>, 234 F.3d at 510 (holding that if the harasser was the plaintiff's supervisor, but took no tangible employment action against plaintiff, a two-part affirmative defense is available).  Defendants have not asserted the affirmative defense in this case, therefore they are strictly liable for the actions of Paonessa as a supervisor.

Defendants will be liable for the harassment while Paonessa was Strack's co-worker when it either intentionally or negligently permitted the conduct to occur.  "The conduct can be ascribed to the employer's negligence when the employer knew or should have known about the harassment and failed to take remedial action."  <u>Dees v. Johnson Controls World Services, Inc.</u>, 168 F.3d 417, 421 (11th Cir. 1999) (citations omitted); <u>Johnson</u>, 234 F.3d at 510.

Defendants knew that Paonessa was sexually harassing Strack.  Paonessa made lewd sexually advances towards Strack in front of Stucki, Lewis, Rubenstein and "J.P.," all members of Defendants' management.  Furthermore, Strack complained on no less than nine or ten occasions to management about the harassing conduct.  (Strack Dep. Exhibit 6)  Defendants therefore had actual notice of the harassment, and yet they took no remedial action to stop the conduct.  (Strack Dep. at 253:24-255:1)  Management simply ignored the harassment it witnessed and Strack's complaints, and allowed the harassment to continue in violation of Title VII.

### III.    CONCLUSION

Strack has provided evidence sufficient to show sexual harassment.  At a minimum, Strack's accounts of sexual harassment meet the threshold of what is required for the case to reach a jury. See Sparks v. Pilot Freight Carriers, Inc., 830 F.2d 1554, 1561, n. 13 (11th Cir.1987) ("With access to all the evidence, and with the common sense to make credibility determinations, a factfinder should not find it difficult to distinguish between harassing actions that constitute a violation of Title VII and those 'ambiguous' actions which simply may not 'create an abusive working environment.'") (internal citations omitted).  Defendants, therefore, have not met their burden of showing that no material issue of fact exists, and summary judgment should be denied.

Dated: November 13, 2007

                                        Respectfully submitted,

                                        RONALD S. COOPER
                                        General Counsel

                                        JAMES LEE
                                        Deputy General Counsel

                                        GWENDOLYN YOUNG REAMS
                                        Associate General Counsel

                                        NORA E. CURTIN
                                        Regional Attorney

                                        MARIA KATE BOEHRINGER
                                        Supervisory Trial Attorney

                                        /s/ Jessica L. Jiménez
                                        JESSICA L. JIMÉNEZ
                                        Trial Attorney
                                        Special Bar No. A5501091
                                        UNITED STATES EQUAL
                                        EMPLOYMENT OPPORTUNITY
                                        COMMISSION

Miami District Office
One Biscayne Tower, Suite 2700
Two Biscayne Boulevard
Miami, Florida 33131
Tel.: (305) 808-1783
Fax: (305) 808-1835
Email: jessica.jimenez@eeoc.gov

/s/ Richard Celler
RICHARD CELLER
Florida Bar No. 0173370
MORGAN & MORGAN, P.A.
7450 Griffin Road, Suite 230
Davie, Florida 33314
Tel: 954-318-0268
Fax: 954-333-3515
Email: rceller@forthepeople.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 13, 2007, I electronically filed the foregoing

PLAINTIFF AND PLAINTIFF-INTERVENOR'S RESPONSE IN OPPOSITION TO

DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT with the Clerk of Court

by using the CM/ECF system, which will send a notice of electronic filing to the following:

> Glen R. Goldsmith
> Goldsmith and Atlas, P.A.
> 9130 S. Dadeland Blvd.
> Suite 1509
> Miami, Florida 33156
> 305 670-5500
> 305 670-5596 Telefax
> ggoldsmith@goldsmithpa.com

> /s/ Jessica L. Jiménez
> Jessica L. Jiménez
> Trial Attorney