UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80169-CIV-HURLEY/HOPKINS

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

       **Plaintiff,**

**RAY STRACK,**

       **Plaintiff-Intervenor,**

vs.

**BELLE GLADE CHEVROLET-CADILLAC-
BUICK-PONTIAC-OLDSMOBILE, INC., et al.,**

       **Defendants.**
_____/

### ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** is before the court upon defendants' motion for partial summary judgment [DE # 25]. For the reasons given below, the court will deny the motion.

#### BACKGROUND

This is primarily a Title VII and Florida Civil Rights Act action. Plaintiff EEOC and plaintiff-intervenor Ray Strack allege that Strack was subjected to unlawful sexual harassment while working for defendants Belle Glade Chevrolet-Cadillac-Buick-Pontiac-Oldsmobile, Inc. and Plattner Automotive Group, Inc, and that defendants illegally retaliated against Strack for reporting defendants' conduct.[1] The facts given below are drawn from the record evidence, viewed in the light most favorable to Strack as the non-moving party. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

---

[1] Strack also asserts a breach of contract claim against defendants. The instant motion for partial summary judgment does not address this claim.

Ray Strack began working for defendants in August 2004 as Internet Manager and eBay Manager. Strack had no complaints about his employment until Brian Paonessa, a co-worker and eventually Strack's supervisor, began to make sexually explicit comments and gestures. The harassment began in October 2004, when Paonessa made advances toward Strack and appeared to suggest a relationship between them. For example, Paonessa approached Strack and said to him, "Ray, you look like a pretty nice guy, I'm a nice guy and together we would make a nice couple." Twelve days later, Paonessa approached Strack and said "Let's do lunch, we could get together and get to know each other better." Strack Dep. at 223-24.

Strack declined Paonessa's advances, and Paonessa's comments became more aggressive and intimidating. In December 2004, as Strack was walking down a hallway, Paonessa came up close behind Strack and said "if you stop I'll stick my dick up your ass." *Id.* at 224, 228. The same day, Paonessa walked up to Strack, grabbed his crotch, and said "can I offer you my dick as a snack?" *Id.* Ex. 2.[2] Approximately a week later, Paonessa approached Strack's left

---

[2] Exhibit 2 to Strack's deposition is Strack's "diary" of Paonessa's harassing comments, and Strack's responses. It was filed with, but does not appear to be part of, Strack's sworn deposition testimony. In deciding this motion for summary judgment, the court generally cannot consider evidence that would not be admissible at trial. *See, e.g.*, *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *Clay v. Equifax, Inc.*, 762 F.2d 952, 956 (11th Cir. 1985).

However, in opposing a motion for summary judgment, a non-movant may rely on inadmissible evidence if the evidence can be "reduced to admissible form." *See Macuba*, 193 F.3d at 1323-24; *Wright v. Southland Corp.*, 187 F.3d 1287, 1304 n.21 (11th Cir. 1999). Here, Strack's notes might form an admissible recording of a past recollection, if it were established that Strack once had knowledge of the events recorded, but now has insufficient recollection of them to testify fully and accurately, and that the notes were made when the matter was fresh in Strack's memory and accurately reflect Strack's knowledge. Fed. R. Evid. 803(5).

In any event, because defendants have not objected to the use of Strack's "diary" for purposes of deciding this motion, the court may consider it. *See Jackson v. Sauls*, 206 F.3d 1156, 1160 n.3 (11th Cir. 2000) ("This . . . evidence was in the summary judgment record, was not challenged, and thus we include it; however, nothing herein should imply whether this evidence is admissible at trial.").

side as Strack was sitting in a chair, unzipped his pants and asked if Strack could "take it in his ear." *Id.*

Several days later, as he approached Strack in a hallway, Paonessa grabbed his crotch, unzipped his pants, and pointed toward his zipper. *Id.* Strack walked away, but Paonessa followed Strack to Strack's office and made "humping" gestures. *Id.* A few days later, at a weekly sales meeting, Paonessa said aloud "Ray [Strack] would suck my dick." *Id.*

Paonessa's harrassment continued in January 2005. On January 7, as Strack stood on the showroom floor, Paonessa approached and said to Strack "you have a pretty mouth and I'd like to cream in it and watch it run down your mouth." *Id.* Days later, in front of Cliff Lewis, then defendants' sales manager, Paonessa told Strack "hey Ray, play with my wang!" *Id.*

Despite these remarks, Paonessa was promoted to sales manager. Stucki Dep. at 140-41. As Strack's supervisor, Paonessa's harassment continued. Paonessa said to Strack in February 2005: "Ray, I could feed you deals, you could have my customers and make a lot of money and also feed you till you're full." After saying this, Paonessa stuck his tongue out and licked his lips. Strack Dep. Ex. 2. In May 2005, as Strack was standing just inside a door to an office, Paonessa entered, blew on Strack's arm and then touched his lips to Strack's arm. *Id.* About eight days later, Paonessa told Strack to pick him up in the morning, and that Strack would "enjoy the ride."

In June 2005, Paonessa walked up closely behind Strack and said "you have a nice ass." Paonessa then grabbed his crotch and said "I'll give you this if you think you could take all of it in the ass." *Id.* Approximately a week later, employees were asked at a weekly meeting to raise their hands if they had not received employee handbooks. Strack raised his hand, and Paonessa looked at Strack and said he would "give [Strack] a hand job." *Id.* In July 2005, Paonessa

3

turned to Strack and said "will you pull this?" while unzipping his pants, sticking out his tongue, and licking his lips.

Strack filed a charge with the EEOC alleging Title VII violations, and the EEOC filed suit in this court on February 22, 2007 [DE # 1].  Strack intervened and filed an intervenor's complaint [DE # 3].  On October 26, 2007, defendants moved for partial summary judgment as to Strack's sexual harassment claims [DE # 25].

## JURISDICTION

This court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the complaint raises claims under 42 U.S.C. § 2000(e).  The court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claim occurred in the Southern District of Florida.

## DISCUSSION

### A.    *Standard of Review for Summary Judgment*

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of meeting this exacting standard.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could return a verdict in his favor. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial and entitles the moving party to summary judgment. *See Celotex*, 477 U.S. at 323; *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998).

### B.   *Defendants' Motion for Partial Summary Judgment*

Sexual harassment under Title VII[3] is legally classified into two categories: "hostile work environment" harassment, which does not result in a tangible employment action; and "*quid pro quo* harassment," which does result in a tangible employment action. *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 508 (11th Cir. 2000). Because Strack does not allege that a tangible employment action resulted from the alleged sexual harassment, his claim falls in the former category.

To establish a hostile work environment claim against his employer, Strack must show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome sexual

---

[3] The Florida Civil Rights Act is modeled on Title VII, and Florida courts apply Title VII case law in interpreting the Act, so that the same analysis is applicable to claims under either statute. *See Jones v. United Space Alliance, LLC*, 494 F.3d 1306, 1310 (11th Cir. 2007).

5

harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment was based on his sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).

### 1. *Protected Group*

Plaintiff-intervenor is a man, and the parties agree that men are a protected group under Title VII. *See Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 682 (1983). Thus, there is no dispute that Strack is a member of a protected group.

### 2. *Unwelcome Sexual Harassment*

The facts as set out above constitute a record from which a reasonable juror could determine that Strack was subjected to unwelcome sexual harassment. Paonessa's repeated sexual advances and comments were vulgar and obviously unwelcome. Defendant argues that some of Paonessa's comments to Strack, such as telling Strack that Strack "would enjoy the ride" with Paonessa to work, are not necessarily sexual in nature. But a reasonable juror could find that they were in fact sexual, and in any event the facts taken in the light most favorable to Strack show that there were many other comments that were unmistakbly sexual. Therefore, Strack has satisfied his burden to show that he was subject to unwelcome sexual harassment.

### 3. *Harassment Based on Sex*

Harassment may be based on sex and thus actionable under Title VII where both the harasser and the victim are men. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 82 (1998). Several circuit courts have held that same-sex harassment plaintiffs may show that harassment is based on sex by showing that the offensive comments or actions were motivated out of sexual desire. *See, e.g.*, *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1264 (10th

6

Cir. 2005); *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999). From the record in this case, a reasonable juror could conclude that Paonessa's comments were motivated by sexual desire. This is particularly true in light of the earlier, milder comments, one reasonable interpretation of which is that Paonessa was sincerely interested in beginning a relationship with Strack. At oral argument, defendants insisted that Paonessa meant only to tease and intimidate Strack and to warn him away from Paonessa's potential customers. But a reasonable juror could also interpret Paonessa's frankly sexual comments as revealing a genuine desire to actually perform the acts he graphically described to Strack. Resolution of that disputed factual issue is inappropriate at the summary judgment stage. Because a reasonable juror could conclude that Paonessa was motivated by sexual desire, Strack has presented sufficient evidence that he was subjected to discrimination because of his sex.

        4.     *Severe and Pervasive Harassment*

A claim of hostile work-environment harassment must establish that the relevant conduct is both subjectively and objectively "severe and pervasive." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). The "severe and pervasive" requirement is meant to ensure that Title VII only reaches those actions which effectively change the terms and conditions of employment, and does not become a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). For harassment to be "severe and pervasive," it must be both subjectively perceived as such by the victim, and objectively so. *Mendoza*, 195 F.3d at 1246.

The four factors that the court must consider in determining whether harassment was "severe and pervasive" are: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening and humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes witht he employee's job performance. *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997).

7

The facts here show that Paonessa frequently engaged in offensive conduct. Some of the alleged incidents occurred on the same day, or within a few days of each other. Moreover, the conduct was fairly severe. Many of Paonessa's comments were not merely flirtatious or potentially suggestive, but obscene. Paonessa's conduct was also, in many instances, physically humiliating to Strack. In several of the alleged incidents, Paonessa came up close behind Strack as Strack was walking down a hallway or sitting in a chair. In one of the alleged incidents, Paonessa touched his lips to Strack's arm. Finally, Strack testified that the harassment negatively affected his job performance by causing him to lose confidence and the ability to concentrate on his work.

Here again, defendants emphasize that some of the incidents could be interpreted as simple horseplay or roughhousing. But the court is required to examine the alleged conduct "in context, not as isolated acts." *Mendoza*, 195 F.3d at 1246. In this case, the harassing aspects of many of Paonessa's comments are mutually reinforcing, so that each of Paonessa's comments is more offensive when considered in the context of the overall pattern of conduct than it might be if taken in isolation. The court thus finds that a reasonable person could conclude that Paonessa's harassment was "severe and pervasive."

     5.    *Employer Liability*

Paonessa is not a defendant in this case. Strack has instead named as defendants their alleged mutual employers, Belle Glade Chevrolet-Cadillac-Buick-Pontiac-Oldsmobile, Inc. and Plattner Automotive Group, Inc.

An employer is directly liable for harassment committed by an employee when it either intentionally or negligently permitted the conduct to occur. *See Dees v. Johnson Controls World Services, Inc.*, 168 F.3d 417, 421 (11th Cir. 1999). In this case, several of the alleged incidents took place in front of supervisors. For example, both parties agree that Sam Stucki, defendants'

8

Order Denying Defendants' Motion for Partial Summary Judgment
EEOC v. Belle Glade Chevrolet-Cadillac-Buick-Pontiac-Oldsmobile, Inc. et al.
Case No. 07-80169-CIV-HURLEY/HOPKINS

sales manager, knew about the conduct, both from witnessing it firsthand and from Strack's complaints. Yet Stucki, apparently believing that the conduct was innocuous, decided not to take any action. From this, and from the knowledge and inaction of other supervisors, a reasonable juror could conclude that defendants were negligent in permitting the offensive conduct to occur.

## Conclusion

The court is satisfied that Strack has presented sufficient evidence to create a genuine issue of material fact as to whether Strack suffered sexual harassment while working for defendants in violation of Title VII.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1.      Defendants' motion for partial summary judgment [DE # 25] is **DENIED**.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 3rd  day of January, 2008.

                                              Daniel T. K. Hurley
                                              United States District Judge

*Copies provided to counsel of record*